---

## Case No. 6,923.

HURRY v. The JOHN & ALICE.

[1 Wash. C. C. 293.] [1]

Circuit Court, D. Pennsylvania. April Term, 1805.

MARITIME LIEN—POWER OF MASTER—HYPOTHECATION—CHARACTER OF—CHARTER-PARTY.

1. An instrument, claimed to be an hypothecation of a vessel, is not such, if it was given to the consignee, when he had funds in his hands to secure the advances made by him for the vessel.

2. A consignee, under such circumstances, cannot enter into a maritime contract with the master of the vessel, so as to bind him to pay marine interest.

3. The cargo and freight is subject to the payment of extraordinary demands, for completing the voyage; and the consignee takes these funds cum onere, and under an implied engagement to make the necessary advances.

4. The master, being also owner of the vessel, may give a specific lien on her, for securing advances made for any purpose; but if this is not given by virtue of his authority as master, it will not be a marine hypothecation.

5. The master cannot hypothecate for a pre-existing debt; but only for advances for a purpose necessary to enable him to complete his voyage, made at the time the necessity existed.

[Cited in Greely v. Smith, Case No. 5,750.]

6. A bond executed as an hypothecation, but not upon the principles which govern such securities, cannot be enforced in a court of admiralty; but must be proceeded upon in a court of common law.

[Cited in The Bridgewater, Case No. 1,865.]

[Appeal from the district court of the United States for the district of Pennsylvania.]

This ship was owned, one-third by Whitesides, who was also master, and the other two-thirds by Samuel Hurry. The former, previous to his first voyage to England, was authorized, by letter of attorney from Samuel Hurry, to borrow money on his account, and to secure it by a bottomry bond on the vessel. In July 1802, she arrived at Liverpool, when Whitesides obtained from the appellant, Nicholas Hurry, £343 0s. 4d. sterling, for the disbursements of the vessel; and Samuel Hurry being a considerable debtor to the appellant, the master, to secure so much thereof, as well as the above sum of three hundred and forty-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

three pounds and four pence, gave a bottomry bond, for fifteen hundred pounds sterling, on the vessel. In November, 1802, the ship having performed her homeward voyage to Philadelphia, returned to Liverpool, with a cargo, consigned to the appellant; when he advanced for the disbursements of the vessel, £1195 19s. 8d. but with no security. She returned to Philadelphia, and again arrived at Liverpool, in June, 1803, with a cargo consigned to the appellant; who advanced for her disbursements £424 2s. 8d. and then took a bottomry bond in June, 1803, £1693 2s. sterling, being the amount of the three sums of £343 0s. 4d., £1195 19s. 8d., £424 2s. 8d. He also chartered the vessel back to Philadelphia, and was to pay £500 for freight. On the arrival of the ship in Philadelphia, after the giving the last bond, she was libelled by Nicholas Hurry, in the district court, to enforce the payment of this bond. Answers were put in by Freeman, claiming one-half of the ship, by virtue of a bill of sale, for a valuable consideration, made by Samuel Hurry before his bankruptcy, and dated 2d July, 1803. Also by the assignees of Samuel Hurry, who committed an act of bankruptcy on the 13th July, 1803. The district court dismissed the libel, and there was an appeal to this court.

Mr. Dallas, for appellant, contended, that the sums advanced for the disbursements of the vessel, at the three several periods were for a maritime consideration; that the master had authority, not only as such, but as owner, to hypothecate the ship. That as to jurisdiction, the question depends on the subject matter, not on the locality of the transaction. No objection to this bond, that it was taken by a consignee. He cited 1 East, 6; Park, Ins. 413, 414; 2 Marsh. Ins. 639, 679; 4 C. Rob. Adm. 1, 2; 2 C. Rob. Adm. 192; 4 C. Rob. Adm. 245; 3 C. Rob. Adm. 267; 6 Mod. 13. 14; Vin. Abr. 328, 329; 5 C. Rob. Adm. 112. 221, 224; Minet v. Gibson, 3 Term R. 481; 2 Brown, Civ. & Adm. Law, 71, 196; 2 Term R. 649; 2 Marsh. Ins. 632; 2 Bl. Comm. 457.

Hare & Chauncey, for appellee.

The bond was given for a pre-existing debt, which cannot lay the foundation for a maritime hypothecation. The advances made were for ordinary disbursements, and not for extraordinary necessaries. They were made by a consignee, with funds in his hands, and where a part owner was present. As to the power of attorney, the bond was not given in execution of it. Though Whitesides was a partner, yet he could not bind his co-partner. General partners may bind each other; but not so in special partnerships, like the present. Though the power of Whitesides to hypothecate the ship be admitted, yet he could not give a maritime hypothecation, so as to give jurisdiction to the court of admiralty; because not given by the master, quoad master, in a foreign country, for necessaries furnished; without which he could not complete the voyage. They cited Abb. Shipp. 118; 2 Moll. bk. 2, c. 2, § 11; Hopk. Mar. Ins. 1; 1 Ves. Sr. 155; 1 Ld. Raym. 378; 2 Marsh. Ins. 640; 5 Burrows, 2724; 1 Wils. 103; Abb. Shipp. 60; Hopk. Mar. Ins. 23; 2 Brown, Civ. & Adm. Law, 72; Abb. Shipp. 112. 113; 1 Ld. Raym. 152, 756; 2 Ld. Raym. 805, 982.

WASHINGTON, Circuit Justice. The bond in question, was given on the 7th of July. 1803, by the master, who was also part owner, and having a cargo in the hands of the consignee, for a sum of money composed of £340 0s. 4d. advanced by the appellant, in July, 1802, and secured by a bottomry bond then given, for a sum including this, and so much more as amounted to £1500; of £1195 19s. 8d. advanced by the same person, on a subsequent voyage, in November, 1802, and £424 2s. 8d. advanced when this bond was given. Now this bond has not one feature in it, which can resemble it to a maritime hypothecation. The implied power of a master, as such, to bind the ship of his owner, for advances made in a foreign country, for necessaries furnished, to enable him to complete his voyage, without which it must miscarry; is a provision purely of maritime law; produced by the necessity of such a predicament. The master, being also owner, may give a specific lien on his vessel, without resorting to this law. He does it in virtue of his title as owner; not by force of an authority, connected with the nature of his employment. Viewing Whitesides in his capacity of master only, this bond, as a maritime hypothecation, cannot be supported. First, because it was given to a consignee, with funds in his hands sufficient to secure the advances he was required to make. In this situation, he could not enter into a contract with the agent of the consignee, obliging him to pay marine, instead of common interest, for moneys advanced by him. The cargo, or the freight, where the freight is payable, is subject to the payment of these extraordinary demands, in cases of necessity; and the consignee, by receiving either, takes it cum onere, and under an implied engagement to discharge the expenses, when the outfits of the vessel may require, to enable her to complete her voyage; after this, he cannot expose the owner of the ship, to the payment of exorbitant interest, and take from the master a hypothecation of the vessel. Second; because, as to the sums of £343 0s. 8d. and £1195 19s. 8d. they had not been advanced for any purpose necessary to enable the master to complete the voyage he was about to perform, at the time the necessity existed for making the contract. Where was that pressing necessity, which can alone warrant the exercise of this extraordinary authority, in the master, at the

time this bond was given? Suppose it once to have existed, it had then passed away. These advances may have created a debt to be discharged by the owner; but, on the 7th of July, 1803, it was a pre-existing debt, which the master and part owner, had no power to secure by a marine hypothecation. As to the sum of £424 2s. 8d., I do not discover any one charge in the account, which is not of the most ordinary kind, and would in almost every voyage, become an item in account between the consignee and the owner; and if the former could subject the ship to the payment of marine interest, for such advances, hypothecation bonds would be the constant attendant of every voyage. As to the power of attorney to Whitesides, admit it remained unexecuted, on the 7th of July, 1803, and that Whitesides acted under its authority; it would convert this bottomry bond into a common hypothecation, to be enforced by the same remedy, as would be proper in other cases of mortgages, made by the owner of personal property, in person or by attorney. If the subject matter of the bond was of a maritime nature, that is, for advances made to enable the ship to complete the voyage; and if it were clear of the objections above mentioned, the master might give a maritime hypothecation, without the aid of this special authority; and if it were not of this nature, the special power could not make it such an hypothecation, though it might enable the master to give a security on the ship, to bind it and his owners. Upon the whole, I am of opinion, that the subject matter of the present suit, belongs not to the jurisdiction of the court of admiralty. Sentence affirmed.

NOTE. The master, for advances made for seamen's wages, previous or afterwards, for the necessary repairs and use of the ship during the voyage, may bind his owner personally. Abbott, 86–91. By the maritime law, the master may hypothecate both ship and cargo, for repairs, &c. during the voyage; which arises from his authority as master, and the necessity of the case: but not for repairs done in this country. Id. 95. Not only may the master, under certain circumstances, pledge the ship by bottomry bond; but the owners and part owners may do so, in any case, to the extent of their interests. In the latter case, the lender has not a remedy in the admiralty court against the ship, as he has in the former, where the master gives an hypothecation for necessaries, furnished in a foreign port. Id. §§ 9–101. In the place of the residence of the owner, the master cannot give a bottomry bond, by the maritime law. In a foreign country, he may, for any purpose necessary to the voyage, whether the occasion arise from any extraordinary particular, or from the ordinary course of the adventure, if he cannot otherwise obtain it; and this binds the owner personally. Id. 101, 102. If the obligee, being unwilling to take upon himself the risk of the voyage, is content not to demand maritime interest; it is competent to the master to pledge the ship, and the personal credit of the owner. In this case, the bond was for payment absolutely, and not on consideration of safe arrival. Id. 102; 1 Ves. Sr. 443. The master may hypothecate, in a foreign country, for necessaries, where he has no owners, nor any goods of theirs, nor of his own, and cannot obtain them by exchange or otherwise. 2 Moll. 126.

[The libellants subsequently brought an action for money had and received for the purpose of recovering the balance of the proceeds of the vessel, which was sold to pay sailors' wages. Case No. 6,922.]